## J. AND R. GEDDES v. WM. A. BENNETT. et al.

A. purchased through B., and in his name, a quantity of whiskey; and although B. was himself a dealer in the article, permitted it to remain in his name and possession with all the *indicia* of ownership. B. obtained for himself large advances on the whiskey from third persons; giving a receipt, in which he acknowledged to hold the whiskey on storage for the persons who made the advance. During the absence of B., A. demanded possession of the whiskey, which the clerk of B. delivered to him, considering him the owner of it, although on the same day, the persons who had made the advance, demanded possession. A. then sold the whiskey to *bonâ fide* purchasers. The plaintiffs, who were the parties who had made the advance, sued the purchasers for the whiskey. *Held:* That the plaintiffs having permitted B. to remain in possession of the whiskey after the advance, they were not, under arts. 3125, 3129, C. C. entitled to a pledge; and that the sale made by A. gave the purchasers a right to the property.

APPEAL from the Fourth District Court of New Orleans, *Strawbridge,* J. *T. R. Wolfe,* for plaintiffs.   *R. Mott* and *C. Roselius,* for defendants. The judgment of the court was pronounced by

EUSTIS, C. J.   The appeal before us is taken by the plaintiffs, from a judgment of the court of the Fourth District Court of New Orleans, rendered against them in favor of *Ellmaker* and *Viosca,* who are the appellees.

The suit was for the recovery of four hundred and fifty-six barrels of whiskey, or its value. This whiskey formed part of a quantity which was the subject of litigation in the cases of *Fullerton* v. *Kennedy* and *Foster*, and of the same plaintiff against *J.* and *R. Geddes*, determined by this court, at January term, 1851, *ante*, p. 312, 316. The facts are nearly the same, with one single exception, as in those cases; and are recited in the opinions delivered. We thought, in those cases, that the whiskey belonged to *Fullerton;* but that as he had permitted it to be bought in the name of *Bennett*, and to remain with him, he being known as an extensive dealer in the article; and that as *Bennett* did not hold it under any of the ordinary commercial relations of consignee, factor or bailee, and was in public and exclusive possession of it; the facts presented an ordinary case, in which one puts his property in the name of another, and thereby subjects it to the contract which persons in good faith make in relation to it. *Fullerton* was the plaintiff in those suits, and failed in his actions against the defendants, who had made a *bonâ fide* advance on the whiskey; the object of those suits being to recover the whiskey, or its value.

In the present action, the merchants making the advance to *Bennett* are the plaintiffs, seeking to recover from the defendants, *Ellmaker* and *Viosca*, a part of the whiskey; alleging it having been transferred to them, to secure the payment of an advance. The defendants purchased the whiskey from *Fullerton*, and paid for it, previous to any demand or notice of the plaintiffs' claim.

It appears, that on receiving the advance, or rather the plaintiffs' notes, which they afterwards paid, *Bennett* endorsed on the warehouse receipt an order to deliver the whiskey held on storage, 764 barrels, to the plaintiffs or their order. On the notice of the warehouseman that he wished it removed, *Bennett* obtained the plaintiffs' permission to have a part of it removed to his own store; giving as a reason, that it would lessen the charges on it. On receiving it, *Bennett* gave the plaintiffs this receipt. "Received, New Orleans, April 19th, 1847, from *J.* and *R. Geddes*, four hundred and fifty-six barrels of whiskey on storage, 456 barrels." On or about the 1st of June, 1847, *Bennett's* clerk delivered the whiskey to *Fullerton*, because, as he says in his examination, he considered it as *Fullerton's*. *Fullerton*, it will be observed, had an office in the same store with *Bennett;* and the latter had left for Galveston the day before the delivery of the whiskey. One of the plaintiffs asked witness to deliver him the whiskey, the same day he delivered it to *Fullerton*. *Fullerton* claimed the whiskey as his own; and after *Bennett* returned to New Orleans, he sanctioned the delivery which had been made to *Fullerton*. When we consider the facts of this very irregular transaction, it appears to us, that the plaintiffs have placed themselves in the same position as *Fullerton* occupied in the other suits. They allowed *Fullerton*, who was the real owner of the property, to take possession of it. He sold it to the defendants *bonâ fide*, and in open market. The delivery to *Fullerton* took place about the 1st of June, and the present suit was only instituted on the 3d of July, following. In this interval, surely, *Fullerton* had a right to sell it to any party acting in good faith. Besides, the plaintiffs have shown no compliance with the articles of the code, concerning the form of the contract of pledge, which it would be necessary to observe in order to enable them to recover against the defendants, who are third persons; and our impression is, that under the circumstances of the case, the delivery of the object pledged to *Bennett*, even under the receipt he gave, would of itself defeat the pledge. Code 3125, 3129.

The judgment of the district court is therefore affirmed, with costs.